478 So.2d 27 (1985)
THE FLORIDA BAR, Complainant,
v.
John L. JAMES, Respondent.
Nos. 62951, 63652 and 65143.
Supreme Court of Florida.
October 24, 1985.
*28 John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, James N. Watson, Jr., Branch Staff Counsel and John A. Boggs, Branch Staff Counsel, Tallahassee, for complainant.
Judith J. Dougherty, Tallahassee, for respondent.
PER CURIAM.
These consolidated disciplinary proceedings by The Florida Bar against John L. James, a member of The Florida Bar, are before us on complaints of The Florida Bar and report of the referee. The referee's report and record have been filed with this Court pursuant to Florida Bar Integration Rule, article XI, Rule 11.06(9)(b). Respondent has petitioned for review of the referee's findings of fact and recommendations of guilt and discipline.

Case Nos. 62,951 and 65,143
The record in these cases documents the disastrous results that occur when a practicing member of the Bar enters into a profit-making enterprise with a commercial business which subordinates the practice of law to the activities of the commercial business. Respondent reached an understanding to act as the sole attorney for Consumer Credit Collection, a for-profit corporation organized to collect delinquent accounts on behalf of its clients. Respondent and the corporation set up operations in the same building with different offices and telephones, but with the same secretary-receptionist. The corporation's standard contract with its clients authorized legal action by the corporation on behalf of the client. The manager of the corporation evaluated the cases and referred those which, in his opinion, merited legal action to respondent.[*] Although respondent had a separate office and files, the evidence shows that the corporate manager had ready access to those files and dealt with clients or debtors who attempted to contact respondent concerning legal actions initiated by respondent. It is apparent that there was a serious lack of coordination between the corporate manager and respondent which resulted in unwarranted legal actions and judgments by the courts on debts for which satisfaction had been obtained and given. In one instance this resulted in a judgment for a debtor against respondent and his client for $1,003.10.
Under the modus operandi, corporate clients were entitled to 100% of the money collected. The corporation received compensation for its efforts in the form of service charges, punitive damages, and attorney fees from the debtors based either on a judgment or the threat of legal action. Any money collected went to the corporation which, in turn, compensated respondent either by the hour or by function. It is readily apparent that compensation for the corporation and respondent depended upon their extracting from the debtors additional payments above the debt due and that this inevitably led to a divergence between the interests of the client and the corporation and respondent. As indicated above, in one instance the aggressive efforts of the corporation and respondent resulted in a judgment for the debtor of over $1,000 against respondent and his plaintiff client when the defendant debtor obtained legal counsel who exposed their activities to the court. In another instance their activities in pursuing an unwarranted action against an alleged debtor resulted in a voluntary dismissal and an award of $500 in attorney fees for the defendant against their plaintiff client. This action had been initiated even though the client refused respondent's *29 face-to-face request for filing fees. The injury to the client was then compounded by respondent directly billing the client, contrary to the supposed arrangement whereby he received compensation from the corporation for $675 in attorney fees, based on a theory of quantum meruit.
Based on the above, the referee recommended that respondent be found guilty of violating his oath as an attorney, the Florida Bar Integration Rules and Florida Bar Code of Professional Responsibility Disciplinary Rules, specifically D.R. 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); D.R. 3-101(A) (aiding a non-lawyer in the unauthorized practice of law); D.R. 3-102(A) (sharing legal fees with a non-lawyer); D.R. 3-103 (forming a partnership with a non-lawyer consisting in part of the practice of law); D.R. 5-107(B) (permitting a person who employs or pays him for rendering legal services to another to regulate his professional judgment in rendering such legal services); and D.R. 7-101(A)(3) (prejudice or damage his client).
Respondent contends he committed none of these transgressions. His contentions are contrary to the evidence which supports the referee's findings and recommendations of guilt.
In the complaint in case No. 65,143, Count II, respondent was also charged with serious misbehavior before a county court which resulted in the judge ordering a bailiff to escort respondent from the courtroom. The referee found that respondent had admitted these allegations and should be found guilty of violating D.R. 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice); D.R. 1-102(A)(6) (conduct which adversely reflects on his ability to practice law); and D.R. 7-101(A)(3) (conduct which prejudices or damages a client in the course of the professional relationship). Respondent stipulated to the truth of the allegations. We approve the referee's findings of fact and recommendations of guilt.

Case No. 63,652
The complaint in this case concerns respondent's conduct of his separate private practice. Respondent represented a client attempting to obtain temporary custody of two children who had been placed in the joint custody of the client and his former wife. The opposing party, the ex-wife, was also represented by counsel. The trial judge denied the motion for temporary custody but ordered that the Department of Health and Rehabilitative Services conduct a home study to assist the judge in determining custody. Prior to the completion of this study, respondent learned that the study allegedly contained information favorable to his client and so informed his client.
Without the knowledge of either counsel, respondent's client obtained a highly favorable understanding with his ex-wife granting him custody of both children. The client then contacted respondent, asked him to draft the agreement, and advised respondent that the ex-wife did not want her attorney involved as she had fired him. Respondent prepared the stipulated agreement which included a waiver of notice and hearing. The ex-wife's signature was obtained and respondent arranged a hearing and prepared an order for the judge's signature. Respondent did not contact opposing counsel to notify him of the hearing or to determine if he no longer represented the ex-wife. Respondent did not appear at the hearing; instead the client represented himself. The judge accepted the stipulation and signed the order giving custody of the children to respondent's client. Several weeks later, represented by her counsel, the ex-wife moved to set aside the previous order on the ground the stipulated agreement had been obtained by misrepresentation and that respondent had violated various disciplinary rules by failing to notify her counsel. The judge granted the motion and set aside the order.
Based on the above, the referee recommended that respondent be found guilty of violating D.R. 1-102(A)(2), (5) and (6) (circumventing a disciplinary rule by actions of *30 another; conduct prejudicial to the administration of justice; conduct adversely reflecting on fitness to practice law); D.R. 7-104(A)(1) (communicating or causing another to communicate with a represented party without consent of representing lawyer); D.R. 7-106(C)(5) and (7) (failure to comply with local custom or practice without notifying opposing counsel of intent not to comply; intentionally violating established rule of procedure); and D.R. 7-110(B) (communicating or causing another to communicate with a judge on the merits of an action in an adversary proceeding without notifying opposing counsel).
Respondent concedes he might have exercised faulty judgment but urges that he had no reason to disbelieve his client and that he attempted to conduct himself ethically by not representing the client at the hearing on the stipulated agreement. Respondent's rationalizations are not persuasive. It is clear that he directly or indirectly violated each of the cited disciplinary rules by failing to communicate immediately with opposing counsel to determine if his client's representations were true. We adopt the referee's recommendations of guilt.
The referee recommended that respondent be suspended for a period of four months and thereafter until he proves his rehabilitation as provided in Rule 11.10(4). Further, that respondent be required to show proof of rehabilitation and to either attend an ethics seminar or pass the ethics section of The Florida Bar examination. In making these recommendations the referee acknowledged he had considered the date that respondent was admitted to the Bar, the delays of the Bar in bringing to hearing the three complaints, and that respondent's transgressions occurred soon after he was admitted to the Bar, approximately four years prior to the referee's report. The Bar agrees with the recommended discipline.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, John L. James, is suspended from the practice of law for a period of four months with proof of rehabilitation required prior to reinstatement. As part of rehabilitation, respondent will be required to pass the ethics section of The Florida Bar examination. Respondent's suspension shall be effective November 25, 1985, thereby giving respondent thirty days to close out his practice and take the necessary steps to protect his clients. Respondent shall not accept any new business until reinstated.
Judgment for costs in the amount of $1,797.28 is entered against respondent for which sum let execution issue.
It is so ordered.
ADKINS, Acting C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] The evidence as to who decided to bring suit is contradictory and ambiguous. The manager testified it was his decision to make on behalf of his client, although he might talk it over with respondent. Respondent testified the clients were his and he consulted with them and brought suit only when it was in their interest.